UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| K&K ORION, LLC, et al.,<br><br>            Plaintiffs,<br><br>    v.<br><br>DYANSYS, INC.,<br><br>            Defendant. | Case No.  21-cv-03566-VC<br><br>**ORDER GRANTING IN PART THE MOTION TO ENFORCE THE JUDGMENT; DENYING THE MOTIONS FOR ATTORNEYS' FEES AND TO ALTER THE JUDGMENT**<br><br>Re: Dkt. Nos. 19, 31, 32 |

   Dyansys is ordered to pay the plaintiffs the $160,000 still owed under the stipulated judgment (plus interest); the rest of the requested relief is denied. This ruling assumes the reader is familiar with the facts, the applicable legal standards, and the arguments made by the parties.

   Some procedural history helps set the stage. Back in July 2021, the parties in this action entered into a settlement agreement under which Dyansys agreed to pay the plaintiffs $350,000. The Court entered judgment accordingly, pursuant to a stipulation, and continued to exercise jurisdiction over the enforcement of the settlement. In August 2023, the plaintiffs filed a motion to enforce the settlement, requesting $160,000 that they were still owed and attorneys' fees. Around this time, defense counsel realized that their only contact at Dyansys had recently passed away, and after repeated efforts to reestablish contact and learning that the company was now defunct, they moved to withdraw. The Court granted the motion to withdraw in early September. Out of an abundance of caution, the Court also set a new briefing schedule to allow Dyansys to respond to the motion to enforce the settlement. Further, the Court requested that the plaintiffs submit a proposed order granting the motion.

   But when the proposed order was submitted in late September, it included multiple

actions that the motion to enforce did not cover: (1) the appointment of a receiver to assist in enforcing the order and (2) leave to file a motion to add Dyansys's late CEO (Srini Nageshwar) and his surviving wife (Irmi Bloching) as additional judgment debtors. At the hearing, the Court explained that such relief needed to be properly moved for—and that the plaintiffs had a responsibility to show that all requested relief is supported by evidence and within the Court's authority. The Court also emphasized that, if the plaintiffs want to bring in additional judgment debtors, they should be served before rather than after the Court rules on the motion to enforce the judgment, so that they have a chance to offer opposition.

Which brings us to the current set of motions. The plaintiffs are entitled to $160,000 in liquidated damages for breach of the settlement agreement, but their other requests are denied because of serious flaws with the filings.

Take some examples. First, the motion for attorneys' fees requests $21,953.90 in fees and costs associated with enforcing the settlement agreement. But the invoices submitted in support of that request include work completed on this case prior to the settlement agreement. Dkt. No. 31-3, Exhibit A, at 2–7. On top of that, the arithmetic doesn't work: the total of the fees accounted for by the invoices is substantially less than the sum claimed, even if you include the fees incurred prior to the settlement agreement.[1] And the other request makes little sense: the plaintiffs ask for prejudgment interest on attorneys' fees for the work of enforcing the settlement, but as part of that request, they ask the Court to amend the 2021 judgment. The plaintiffs do not explain why amendment to the judgment would be needed. But, more importantly, that judgment was stipulated to by the parties—it would be inappropriate for the Court to change it at one party's request, years later.[2]

Second, the motion to alter the judgment is, at times, incoherent. One page includes

---

[1] It may be that the attorneys' costs would account for that difference, but no documentation was provided to support any award of costs.

[2] This is the plaintiffs' second request for attorneys' fees. The initial request was part of the motion to enforce the settlement. However, the only evidentiary support offered at that time was a declaration from the client about how much he paid. While perhaps one instance of inadequate submissions could be excused, a second one is not.

essentially the same sentence repeated three times across two paragraphs, with factual narrative interspersed in no particular timeline. Dkt. No. 32-1 at 8. To use one example, consider the following passage: "On June 27, 2023, Nageshwar died. Judgment Creditor recently learned that Nageshwar did so despite the fact that the Judgment Debtor, Dyansys's corporate status voided by the Secretary of State of Delaware since March 1, 2011, on account of delinquent tax filings." *Id.*

Third, the plaintiffs request amendment of the judgment under Federal Rule of Civil Procedure 59(e). Although they cite a case describing the grounds for a Rule 59(e) motion, they never quote Rule 59(e) directly. That is likely because the provision reads, in full: "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." The judgment was entered in July 2021. The motion was filed in October 2023, well over 28 days later.[3]

The plaintiffs have also improperly supported their request for amendment to add judgment debtors under Rule 69(a). That rule "permits judgment creditors to use any execution method consistent with the practice and procedure of the state in which the district court sits." *In re Levander*, 180 F.3d 1114, 1121 (9th Cir. 1991). The relevant state rule is California Code of Civil Procedure § 187, which has two requirements: "(1) that the new party be the alter ego of the old party *and* (2) that the new party had controlled the litigation, thereby having had the opportunity to litigate, in order to satisfy due process concerns." *Id.* (quoting *Triplett v. Farmers Ins. Exchange*, 24 Cal. App. 4th 1415, 1421 (1994)). The thrust of amendment under § 187 is that the conduct of the additional defendant "approached a fraud on the Court" in that the plaintiff "sued the right party under the wrong name, a fact which must have been clear to the defense from the inception of the litigation" but the defense nonetheless said "nothing about the

---

[3] While the timing issue (and its omission from the plaintiffs' motion) is the most glaring, it would not even be the only obstacle with Rule 59(e) amendment. Such an amendment is "an extraordinary remedy, to be used rarely," and none of the grounds for amendment are present here anyway. Innovation Ventures LLC v. N2G Distributing, Inc., No. SACV 12-717 ABC (Ex), 2014 WL 10384631, at *1 (N.D. Cal. Feb. 18, 2014).

mistake." *Carr v. Barnabey's Hotel Corp.*, 23 Cal. App. 4th 14, 20 (1994). And the standard for holding that an individual is the alter ego of a corporation is a demanding one. It is appropriate "only when two conditions are met: (1) there is such a unity of interest and ownership that the individuality, or separateness, of the said persona and corporation has ceased, and (2) an adherence to the fiction of the separate existence of the corporation would sanction a fraud or promote injustice." *SEC v. Hickey*, 322 F.3d 1123, 1128 (9th Cir. 2003) (internal quotations and alterations omitted) (quoting *Firstmark Capital Corp. v. Hempel Fin. Corp.*, 859 F.2d 92, 94 (9th Cir. 1988)). To make this showing, the plaintiffs only submit a document showing that Nageshwar was Dyansys's CEO in 2022 and a set of four emails from Nageshwar, Bloching, and someone named Dieter Hofherr.[4]

The very evidence submitted by the plaintiffs suggests that Bloching is not an alter ego of Dyansys. Bloching herself indicated that she was unaware of the "mess" she would be "left" with after her husband's passing and expressed how "hurt" and "disappointed" she was to learn of his "irresponsibility." Dkt. No. 32-4 at 3. Her lack of involvement with Dyansys or awareness of its financial state prior to Nageshwar's death is further confirmed by Hofherr's email.[5] It can hardly be said, then, that Bloching controlled the 2021 litigation. Moreover, in support of alter ego, the plaintiffs' primary argument is that Dyansys has remained insufficiently capitalized after it came under Bloching's management—but, in context, that can hardly be said to show that she is abusing the corporate form. In her own words, she inherited the mess.

There is a stronger argument that Nageshwar was an alter ego for Dyansys. He seems to have personally made the decision to settle in the prior litigation. And Dyansys's corporate status was voided in 2011 for tax delinquency. Dkt. No. 23-2 at 8. And Bloching described herself as

---

[4] The plaintiffs failed to say who Hofherr is or describe his connection to Dyansys. The email submitted is difficult to read as there are many missing letters, but the basic information is mostly intelligible. It seems that one sentence suggests that Hofherr helped Nageshwar consolidate several entities into Dyansys, but he was not an employee of the company.
[5] It says something like "[Bloching] has a lot of challenges to work on all these challenges she was not aware of so is a huge burden no her. Any help she can get she appreciated." Dkt. No. 32-7 at 3.

"the single major shareholder in Dyansys," which suggests that Nageshwar (or some combination of Nageshwar and his wife) mostly owned the company at the time of the litigation. Dkt. No. 32-6 at 3. And it appears the company has no board of directors, which presumably was true while Nageshwar was the CEO. However, there are other outstanding issues. For instance, the plaintiffs submit an email from Bloching to the other shareholders in the company, asking for advice about next steps for managing the company. Dkt. No. 32-6. Moreover, in the email, Bloching describes Dyansys's products, ongoing operations, current employees, and third-party partners. Dkt. No. 32-6. That hardly paints a picture of an individual masquerading as a corporate shell to avoid personal liability. There are also assertions of commingling of assets by Nageshwar while he was alive, but nothing in the record backs this up.[6] On top of all that, these facts are barely drawn out in the motion and their varying implications are hardly considered.

At its core, the motion argues that Bloching and Nageshwar's estate should be made additional judgment debtors because individuals associated with Dyansys are attempting to "evade" the company's obligation to pay the full settlement amount and "frustrate any judgment." Thus, they argue, justice requires personal liability. But in support of that assertion, the plaintiffs only provide emails by various people involved with Dyansys explaining a situation that many distressed companies face: if a major creditor calls in a debt immediately, then the debtor will be forced to fold its operations and/or declare bankruptcy, which may ultimately be worse for the creditor than a world in which the company was allowed to continue operating and make more money to grow the pot for all. That hardly matches the motion's bald descriptions of ill intent. Whether Dyansys is in a situation that warrants bankruptcy proceedings is a question for after it files; and if Dyansys does file for bankruptcy, then there is an established legal

---

[6] The plaintiffs' citations suggest that commingling is drawn from a March email from Nageshwar and an August message from Bloching. The message from Bloching says nothing about Nageshwar commingling funds. Dkt. No. 32-4. Nor does the email from Nageshwar himself. Dkt. No. 32-3. He does say that "the neurostimulator business was developed with money from [his] personal assets" and that he "sold [his] homes in Geneva and India" to pay for it. Dkt. No. 32-3 at 3. But that may mean he invested in the company, not that he commingled funds or used company resources for personal expenses.

5

process for determining how to divide Dyansys's remaining assets among its creditors. And if the plaintiffs feel they have a claim against Bloching or Nageshwar's estate for the amount owed under the settlement agreement—for example, because the corporation and its limitation on personal liability is invalid—then they can pursue those claims. But Dyansys considering filing for bankruptcy doesn't support the personal liability of Bloching or the estate, despite the plaintiffs' many invocations to the contrary.

Ultimately, the decision to amend a judgment to add judgment debtors "lies in the sound discretion of the trial court." *Carr*, 23 Ca. App. 4th at 20. On this record, the Court cannot conclude that such amendment is proper.

The Court declines to exercise further jurisdiction over the enforcement of the settlement agreement. The plaintiffs have had multiple chances to clearly communicate and support their requests for relief. Instead, the plaintiffs have continued to expand their requests, failing repeatedly to offer cogent legal arguments or sufficient evidentiary development. The fact that Dyansys and the proposed additional judgment debtors have not contested the motions does not take away from the Court's responsibility to vet the plaintiffs' arguments. Thus, this Court will not give the plaintiffs yet another chance to argue before it that attorneys' fees or amendment of the judgment are appropriate.

**IT IS SO ORDERED.**

Dated: March 13, 2024

_____
VINCE CHHABRIA
United States District Judge